IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES VINSON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1746-M |
| | § | |
| CHROMALLOY GAS TURBINE, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment [Docket Entry #16]. For the reasons explained below, the Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

In September 2004, Chromalloy Gas Turbine, LLC ("Chromalloy"), which remanufactures airplane turbine engines, hired Vinson as a machine operator for its Dallas facility. Vinson had thirty years of machine operating experience. While at Chromalloy, Vinson worked primarily on blasters, but trained on other machines as well. In an affidavit, Vinson claims that in 2008, when he was sixty years old, he felt discriminated against when he was denied an opportunity to work on another machine at Chromalloy, an opportunity he claims was instead given to a younger, less experienced, employee.[1] In his affidavit, Vinson states that in about July 2008, he complained to Liz Massay, a human resources representative at Chromalloy that this was age discrimination.[2] Vinson also claims, and Chromalloy does not dispute, that his supervisor, Pedro Marquez, referred to him as an "old man" and told him he worked too slowly. Vinson was terminated in December 2008.

---

[1] Vinson Aff. ¶ 3.
[2] *Id.*

### A. Reduction-in-Force

Chromalloy presented summary judgment evidence in the form of a declaration of Chromalloy's plant manager, Ken Ferriabough, that in 2008, its Dallas facility suffered a 30% drop in revenue from the preceding year.[3] No contrary evidence was offered by the Plaintiff. Ferriabough implemented a plant-wide reduction-in-force ("RIF") to address the revenue drop. Ferriabough decided to reduce the size of the Airfoils Processing Department ("APD"), where Vinson worked, from sixteen operators to eleven. APD operators ran eleven specialized machines.

Ferriabough states he evaluated the sixteen operators by giving points to the following: (1) one point for each machine the operator could proficiently operate without supervision and without generating excessive scrap; and (2) one point for the operator's ability to clean parts. Proficiency to operate machines was determined by Ferriabough based on his review of training hours, prior performance evaluations, including reports of scrap generated, and his visual observations of the operators. Ferriabough assumed every worker could proficiently operate blasters and tumblers, which were relatively simple to operate, and that each worker could clean parts. Thus, every operator was given at least three points.

According to Ferriabough's declaration, Vinson's performance evaluations demonstrated that he had difficulty with machines other than blasters and tumblers, that he could not independently operate such machines, and that he generated a significant amount of scrap. Ferriabough therefore awarded Vinson the minimum of three points.

The following is a summary of the points awarded to each member of the APD, along with the age of each:

---

[3] Ferriabough Decl. ¶ 4.

| Score | Age |
|---|---|
| 8 | 58 |
| 7 | 47 |
| 6 | 51 |
| 5 | 43 |
| 5 | 40 |
| 5 | 60 |
| 5 | 61 |
| 5 | 47 |
| 5 | 53 |
| 4 | 65 |
| 4 | 44 |
| **4** | **63** |
| **4** | **33** |
| **3** | **55** |
| **3** | **37** |
| **3** | **60 (Vinson)** |

Among the five lowest scoring employees, two were under forty, one was fifty-five, and Vinson and another employee were sixty or older.[4] Among the eleven highest scoring employees, three were sixty or older. The only employees under forty were among the five lowest scoring. On December 4, 2008, Chromalloy fired the five lowest scoring employees, including Vinson. Those retained were, on average, two years older than those discharged.

**B. Points Calculation & Allegations of Discrimination in Termination Decision**

On September 18, 2009, Vinson filed this action, asserting age discrimination and retaliation under Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (2006) ("ADEA"); and the Texas Commission on Human Rights Act, Tex. Labor Code Ann. §§ 21.001–21.556 (Vernon 2009) ("TCHRA"). Specifically, Vinson disputes the accuracy of his point allocation, and alleges that his termination was a pretext for retaliation and age discrimination. Relying on his affidavit and

---

[4] Ferriabough declares he broke the tie between the four employees with a score of four by retaining those two employees with other "special skills," such as working in another manufacturing department and being able to "deburr." Ferriabough Decl. ¶¶ 18, 19.

those of two former or current co-workers—Joe Gomez and Francisco Medina—Vinson emphasizes his capabilities and experience, and questions whether Chromalloy business had actually slowed down and whether Ferriabough had personal knowledge of his work performance. Gomez only worked at Chromalloy for four months, from April to December 2007, long before the RIF. Medina, who was also sixty but not terminated, claims that he does "not recall" Ferriabough inspecting his work, and asserts that Marquez discriminated against him, but neither of those matters impeaches Ferriabough's sworn evidence explaining the RIF and his allocation of points to Vinson.

Vinson questions whether he would have had more points if Ferriabough had taken into consideration Vinson's earlier training and whether the performance evaluations Ferriabough considered were based on Marquez's biased opinion of Vinson's work. Such questions do not constitute evidence. Ferriabough declares that his point allocation would not have been impacted by Vinson's earlier training and that his RIF decision was made wholly independently of Marquez's views. There is no evidence of Marquez's involvement in the performance evaluations.

Vinson further speculates that Julio Aaya, 43, who was allegedly less experienced than Vinson and who was friends with Marquez, replaced Vinson. In deposition, however, Vinson could not dispute that his responsibilities were covered by several different operators, including some who were older than he was.[5] Vinson offered no evidence that he was replaced only by Aaya. Further, Vinson speculates that Chromalloy terminated him before his retirement plan would vest, and notes that he was the only operator eligible for retirement plan vesting.

---

[5] Vinson Dep. 124:5–12.

## II. LEGAL STANDARD

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[6] A genuine issue of material fact exists when a reasonable jury could find for the nonmoving party.[7] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[8] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts in the summary judgment record that prove the existence of a genuine issue of material fact.[9] In determining whether genuine issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant,[10] but factual controversies do not exist where the nonmovant relies on conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.[11]

## III. ANALYSIS

### A. Retaliation

Vinson claims that when he was fired, it was in retaliation for his engaging in protected activity. Because the *McDonnell Douglas* test applies to unlawful retaliation claims,[12] Vinson must first establish a *prima facie* case, and if he does so, Chromalloy may then articulate a

---

[6] Fed. R. Civ. P. 56(c).
[7] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[8] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322–25).
[9] *See* Fed. R. Civ. P. 56(e)(2); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009).
[10] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).
[11] *Duffie v. U.S.*, 600 F.3d 362, 371 (5th. Cir. 2010).
[12] *Smith v. Xerox Corp.*, 602 F.3d 320, 327 (5th Cir. 2010).

legitimate, nondiscriminatory reason for the adverse employment action.  Vinson will in turn have the burden to show that Chromalloy's explanation is a pretext for unlawful retaliation.[13]

To establish a *prima facie* case, Vinson must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the adverse employment action.[14]  Here, Vinson cannot establish a *prima facie* case, because he has not demonstrated that he engaged in any protected activity nor that there is a nexus between his activity and his termination.

An employee has engaged in a "protected activity" when he "opposed any . . . unlawful employment practice" or has made a "charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" involving claims under 42 U.S.C. § 2000e-3.[15]  Although Vinson engaged in protected activity when he filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), he did so only after he was terminated.[16]

In his affidavit, Vinson states that in about July of 2008 he complained to Massay that he was being discriminated against;[17] however, in his deposition, Vinson admitted he did not notify Chromalloy of his age discrimination claims.[18]  A party cannot defeat a motion for summary judgment by using an affidavit that contradicts, without explanation, his sworn testimony.[19]

---

[13] *See Long v. Eastfield College*, 88 F.3d 300, 304–05 (5th Cir. 1996).
[14] *Baker v. Amer. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).
[15] 42 U.S.C. § 2000e-3(a).
[16] Pl.'s Compl. 14 (date of EEOC filing on December 15, 2008); Vinson Aff. ¶4 (date of termination on December 4, 2008).
[17] Vinson Aff. ¶3.
[18] Vinson Dep. 173:15–23.
[19] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992) ("[N]onmovant cannot defeat summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.").  Here, Vinson offers no explanation for the contradiction.

Even if Vinson had made a complaint to Massay of age discrimination, Vinson does not establish how such a complaint is causally connected to his termination. To do so, Vinson would have to show that his termination was based at least in part on the decision maker's knowledge of his previous protected activity.[20] While timing can sometimes be a relevant factor in determining whether a causal connection exists, the mere fact that some adverse action is taken after an employee engages in protected activity is not necessarily sufficient to establish a *prima facie* case.[21]

Here, Vinson has produced no evidence establishing a causal link between his alleged complaint to Massay in July 2008 and his termination in December 2008. Vinson merely states in his affidavit that he complained to Massay, without establishing that Ferriabough, who made the termination decision, knew anything about his communications to Massay. Without evidence to establish such a causal connection, even if the complaint was made (and his deposition establishes it was not), Vinson cannot make a *prima facie* case, and summary judgment for Defendant is thus appropriate on Plaintiff's retaliation claim.

**B. Discrimination**

The ADEA[22] and the TCHRA[23] prohibit employers from engaging in age discrimination. The law governing claims under the TCHRA and Title VII is identical.[24] Therefore, the Court

---

[20] *Ackel v. National Communications, Inc.*, 339 F.3d 376, 386–87 (5th Cir. 2003) (quoting *Medina v. Ramsey Steel Company*, 238 F.3d 674, 684 (5th Cir. 2001)).
[21] *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–10 (5th Cir. 1999).
[22] The ADEA states that "[i]t shall be unlawful for an employer . . . to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1).
[23] The Texas Labor Code states: "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment. . . ." Tex. Labor. Code § 21.051(1). Texas's provision for age discrimination claims was designed, in part, to bring Texas "in line with federal laws addressing discrimination." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).

relies on Title VII analysis solely for purposes of the TCHRA discrimination claim, because Title VII does not expressly prohibit age discrimination.[25]

Under the *McDonnell Douglas* framework,[26] Vinson carries the initial burden to establish a *prima facie* case of discrimination. If he does, then Chromalloy must articulate a legitimate, nondiscriminatory reason for its action. Then, Vinson has an opportunity to show that Chromalloy's reasons were a mere pretext for a discriminatory decision, or that age was a "motivating factor," for Vinson's termination under the TCHRA;[27] or that age was the "but for" cause of his termination, under the ADEA.[28]

1. ***Prima Facie* Case**

To establish a *prima facie* case of age discrimination arising out of a termination, a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged

---

[24] *Shackelford*, 190 F.3d at 404 n.2. Title VII makes it unlawful for an employer to discriminate against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2.
[25] *McClaren v. Morrison Mgmt.*, 420 F.3d 457, 461–62 (5th Cir. 2005).
[26] 411 U.S. 792, 802 (1973) (establishing a burden-shifting analysis used for Title VII disparate treatment claims); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 n. 3 (5th Cir. 2000) (applying *McDonnell Douglas* rubric to ADEA claims); *Shackelford*, 190 F.3d at 404 n.2 (5th Cir. 1999) (applying *McDonnell Douglas* to TCHRA claims). For ADEA claims, until recently, courts applied the "motivating factor" analysis in the last step of the *McDonnell Douglas* framework. However, the Supreme Court recently held that in ADEA cases, the plaintiff must prove that "but for" age discrimination, plaintiff would not have been discharged. *See Gross v. FBL Fin. Servs., Inc.*, __ U.S. __, 129 S.Ct. 2343, 2349 n.2 (June 18, 2009). There, the Supreme Court did not specify whether the burden shifting approach of *McDonnell Douglas* still applied in ADEA cases. Here, the parties do not dispute the application of *McDonnell Douglas*, and the Fifth Circuit has consistently applied it to ADEA cases. *See, e.g.*, *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Therefore, the Court will apply *McDonnell Douglas* here. *See also Boyd v. Dallas Ind. Sch. Dist.*, No. 3:08-cv-426-M, 2010 WL 1687665, at *6 (N.D. Tex. Apr. 27, 2010) (Lynn, J.) (applying "but for" causation and *McDonnell Douglas* to ADEA claim).
[27] Tex. Lab. Code § 21.125(a)(pursuant to the TCHRA, plaintiff must demonstrate that "age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice."); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003) (motivating factor analysis under Title VII).
[28] *Gross*, 129 S.Ct. at 2349 n.2 (June 18, 2009).

because of his age.[29] Defendant does not challenge that Vinson makes out a *prima facie* case of discrimination.[30]

2. **Nondiscriminatory Reason**

Chromalloy claims the economically driven RIF and Vinson's performance and resulting point allocation provided legitimate, nondiscriminatory reasons for his termination. An RIF has been recognized as a legitimate, nondiscriminatory reason for terminating an employee,[31] as has basing a layoff on performance.[32] The Court concludes on evidence before it that the Defendant has articulated legitimate, nondiscriminatory reasons for terminating Plaintiff's employment.

3. **Pretext**

The burden thus shifts to Vinson to show that the reasons offered by Defendant are pretexts for discrimination.[33] Under the TCHRA, discrimination need only be a "motivating factor," and under the ADEA, Vinson must prove that "but for" his age, he would not have been terminated. Here, Vinson argues the reasons proffered for his termination—an RIF due to decreasing revenue, and Plaintiff's placement at the bottom of Ferriabough's analysis—were pretextual.

Unsubstantiated and subjective beliefs, summary assertions, conclusory allegations, and opinions do not constitute competent summary judgment evidence.[34] Vinson fails to establish that age was the "but for" cause or even a motivating factor for his termination.

Vinson first relies on several comments by Marquez—such as calling him "old man" and

---

[29] The same elements apply to claims under the ADEA, Title VII, and TCHRA. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (ADEA); *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003) (Title VII); *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 462 (5th Cir. 2005) (TCHRA).
[30] *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (assuming *prima facie* case because case decided on pretext issue).
[31] *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).
[32] *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("Further, even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.").
[33] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).
[34] *See First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

accusing him of working too slowly—as proof of Defendant's discrimination. The Fifth Circuit has repeatedly held that "stray remarks" do not prove age discrimination.[35] However, even if these were not stray remarks, comments can serve as sufficient evidence of age discrimination only if they are: (1) age-related, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue.[36] Vinson provided no proof that Marquez's remarks were proximate in time to his termination, no proof that Marquez had any role in the decision to terminate him, nor any proof that Marquez's remarks were known to Ferriabough or were otherwise related to Vinson's termination. Vinson merely speculates that Marquez had authority over his termination or that he influenced Ferriabough's decision. Such uncorroborated speculation does not defeat summary judgment.

To impute Marquez's remarks to Ferriabough, Vinson must present evidence that: (1) the decision maker merely rubber stamped the decision of another supervisor; and (2) that the supervisor who influenced the adverse employment action exhibited discriminatory animus towards him.[37] The evidence presented here does not show that Ferriabough rubber stamped any decision by Marquez to terminate Vinson. Ferriabough's declaration states that he made his decision independently and based on a number of factors, including performance evaluations.[38] Vinson's mere speculation otherwise does not establish a genuine issue of material fact.

Vinson next contends that the points system was a pretext for age discrimination, because Ferriabough did not consider all of Vinson's training and his ability to operate all machinery. However, Ferriabough declared he did not have access to Vinson's 2005 training records, and

---

[35] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010); *Tex. Instruments, Inc.*, 100 F.3d at 1181.
[36] *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001).
[37] *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003).
[38] Ferriabough Decl. ¶ 15.

stated that had he known of Vinson's other training, his decision would have been the same.[39]

Vinson does not show how Ferriabough's evaluation was pretextual or how any alleged pretext impacted his point ranking. Further, even if there were errors in application of the factors used to determine Vinson's point allocation, that does not prove pretext. In fact, the application of the point system suggests that age was not a factor in the allocation process, since 40% of those discharged were under forty.[40]

Vinson speculates that a "credible" reason for his termination was to prevent his retirement plan from vesting. For this conclusion, Vinson offers no substantiating proof. Further, what the ADEA prohibits is discrimination on the basis of age, and termination prior to eligibility for retirement benefits, by itself, does not constitute age discrimination.[41]

Vinson claims the RIF was pretextual because there was no proof that Chromalloy's business was suffering. Vinson and Medina's observations that there was sufficient work at Chromalloy to keep Vinson employed does not prove that revenues had not significantly decreased, as Ferriabough's declaration proves, nor that the RIF was otherwise pretextual. Discrimination laws are not vehicles for judicial second-guessing of business decisions.[42]

Finally, Vinson maintains he had superior qualifications over another employee who he claims replaced him. Although Chromalloy disputes that one employee replaced Vinson, for this analysis the Court will assume the accuracy of Vinson's claim that one person, Julio Aaya, 43, replaced him. In an RIF age discrimination case, a plaintiff may establish pretext by showing

---

[39] Ferriabough Decl. ¶ 25.
[40] *Tex. Instruments*, 100 F.3d at 1181 (noting that candidate retained was 51 and the plaintiff was 55).
[41] *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) ("fast-approaching eligibility for retirement benefits" was not sufficient alone to support a finding of age discrimination "because the ADEA prohibits discrimination on the basis of age, not salary or seniority"). *See also Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991) (assertions regarding seniority and reduction in retirement pay "are not relevant to age discrimination, but seniority").
[42] *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) (declining to second guess whether termination was a good use of company resources). Further, an employer "is entitled to be unreasonable so long as it does not act with discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).

that he was "clearly better qualified" for his position than a younger, similarly situated employee who was not included in the RIF.[43] The disparities in qualifications must be of "such weight and significance that no reasonable person, in the exercise of impartial judgment," could have chosen to terminate the plaintiff, rather than the other person.[44] To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his contention that he was clearly better qualified; mere subjective speculation will not suffice. Here, Vinson notes Aaya had been at Chromalloy for nine months, while Vinson had been there just over four years. Longer service, however, does not establish superior qualifications,[45] and Vinson offers nothing more. Clearly, Vinson does not prove he was significantly more qualified than Aaya.

In conclusion, Vinson presents no genuine issue of material fact that age was even a motivating factor for his termination let alone the "but for" cause, and thus does not meet his burden on establishing the third element of the *McDonnell Douglas* analysis.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

November 23, 2010.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[43] *Texas Instruments Inc.*, 100 F.3d at 1184 n.10. *See also Moss*, 61 F.3d at 923.

[44] *See Ash v. Tyson*, 546 U.S. 454, 457 (2006) (approving similar language while rejecting the requirement that the disparity in qualifications be so apparent as virtually to "jump off the page and slap you in the face"). This evidence, however, must be more than merely subjective and speculative. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993).

[45] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).